# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: November 22, 2023

* * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ROBERT SCOTT and ANGELA M. KECK as Co-Conservators of the Estate of Minor, A.K., | * * * * | UNPUBLISHED |
| Petitioners, | * * | No. 18-915V |
| v. | * * | Special Master Dorsey |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * * | Decision Based on Stipulation; Diphtheria-Tetanus-Acellular Pertussis ("DTaP") Vaccine; Hepatitis B ("Hep B") Vaccine; Inactivated Polio Vaccine ("IPV"); |
| Respondent. | * * * | Haemophilus Influenzae Type B ("Hib") Vaccine; Pneumococcal conjugate Vaccine; Transverse Myelitis ("TM"). |

* * * * * * * * * * * * * * * * * * * * * * * * *

LeLand F. Dempsey, Dempsey & Kingsland, P.C., Kansas City, MO, for Petitioners.
Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION BASED ON STIPULATION[1]

On June 26, 2018, Jessica Cook and Brandon Keck, as legal representatives of A.K., filed a petition in the National Vaccine Injury Program[2] alleging that as a result of a diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B ("Hep B"), inactivated polio ("IPV"),

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), Petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act").  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

haemophilus influenzae type b ("Hib"), and Pneumococcal conjugate vaccines administered on September 15, 2015, A.K. developed transverse myelitis ("TM"). Petition at Preamble (ECF No. 1). On August 15, 2023, Robert Scott and Angela Keck, as co-conservators of the estate of minor A.K. ("Petitioner"), were substituted as the current Petitioners along with a second amended petition.[3]  Second Amended Petition (ECF No. 118).

On November 21, 2023, the parties filed a stipulation recommending an award of compensation to Petitioner. Stipulation (ECF No. 121). Respondent denies that the Tdap, Hep B, IPV, Hib, and/or Pneumococcal conjugate vaccines caused A.K.'s TM, or any other injury, and denies that A.K.'s current condition is a sequalae of a vaccine-related injury. Nevertheless, the parties agree to the joint stipulation, attached hereto as Appendix A. The undersigned finds the stipulation reasonable and adopts it as the decision of the Court in awarding damages, on the terms set forth therein.

The parties stipulate that Petitioners shall receive the following compensation:

   a.  **A lump sum of $1,047,256.50, which amount represents compensation for first year life care expenses ($38,371.92) and trust seed funds ($1,008,884.58), in the form of a check payable to Regions Bank, as trustee of the grantor reversionary trust established for the benefit of A.K.;**

   b.  **A lump sum of $250,000.00, which amount represents compensation for partial lost future earnings, in the form of a check payable to Petitioners as co-conservators of the estate of A.K. for the benefit of A.K.;**

   c.  **A lump sum of $78,563.29, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to Petitioners, Robert Scott Keck and Angela M. Keck;**

   d.  **A lump sum of $33,003.23, representing reimbursement of a State of Missouri Medicaid lien for services rendered on behalf of A.K., in the form of a check payable jointly to Petitioners and**

**Optum Subrogation Services**
**L-3994**
**Columbus, OH 43260-3994**
**Optum File #: SN23385893**
**Attn: Karen Challeen**

**Petitioners agree to endorse this check to Optum Subrogation Services.**

---

[3] A first amended petition was filed on May 5, 2023 by the original Petitioners. First Amended Petition (ECF No. 95). No substantive claims were added in either the first or second amended petitions.

     **e.** **An amount sufficient to purchase the annuity contract described in paragraph 10 of the stipulation, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company"); and**

     **f.** **An amount of $250,000.00 to purchase the annuity contract described in paragraph 11 of the stipulation, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").**

Stipulation at ¶ 8.  This amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a).

     The undersigned approves the requested amount for Petitioners' compensation. Accordingly, an award should be made consistent with the stipulation.

     In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with the terms of the parties' stipulation.[4]

     **IT IS SO ORDERED.**

                                      **s/Nora B. Dorsey**
                                      Nora B. Dorsey
                                      Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS**

| | | |
|---|---|---|
| **ROBERT SCOTT** and **ANGELA M. KECK** as Co-Conservators of the Estate of Minor, **A.K.**, | ) ) ) ) | |
| Petitioners, | ) | No. 18-915V |
| v. | ) ) | Special Master Dorsey ECF |
| **SECRETARY OF HEALTH AND HUMAN SERVICES**, | ) ) ) | |
| Respondent. | ) | |

<u>STIPULATION</u>

The parties hereby stipulate to the following matters:

1.      On behalf of their granddaughter, A.K., petitioners filed a second amended petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program").[1]  The petition seeks compensation for injuries allegedly related to A.K.'s receipt of the Diphtheria, Tetanus, acellular Pertussis ("DTaP"); Hepatitis B ("Hep. B"); inactivated Poliovirus (IPV); Haemophilus Influenzae type B ("HIB"); and pneumococcal conjugate vaccines, which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2.      A.K. received the subject immunizations on September 15, 2015.

3.      These vaccines were administered within the United States.

4.      Petitioners allege that the subject vaccines caused A.K. to develop transverse myelitis ("TM"), and that A.K. experienced residual effects of this injury for more than six months.

---

[1]  The original Petition was filed on June 26, 2018, and an Amended Petition was filed on May 5, 2023, by former petitioners, Jessica Cook and Brandon Keck.  On August 15, 2023, Robert Scott and Angela Keck were substituted as current petitioners, and a second Amended Petition listing them as petitioners was filed on that same day.  No substantive claims were added in either the first or second Amended Petitions.

5.     Petitioners represent that there has been no prior award or settlement of a civil action for damages on behalf of A.K. as a result of her condition.

6.     Respondent denies that the Tdap, Hep. B, IVP, HIB, and/or pneumococcal conjugate vaccines caused A.K.'s TM, or any other injury, and denies that A.K's current condition is a sequelae of a vaccine-related injury.

7.     Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8.     As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioners have filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

   a.   A lump sum of $1,047,256.50, which amount represents compensation for first year life care expenses ($38,371.92) and trust seed funds ($1,008,884.58), in the form of a check payable to Regions Bank, as trustee of the grantor reversionary trust established for the benefit of A.K.;

   b.   A lump sum of $250,000.00, which amount represents compensation for partial lost future earnings, in the form of a check payable to petitioners as co-conservators of the estate of A.K. for the benefit of A.K.;

   c.   A lump sum of $78,563.29, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Robert Scott Keck and Angela M. Keck;

   d.   A lump sum of $33,003.23,[2] representing reimbursement of a State of Missouri Medicaid lien for services rendered on behalf of A.K., in the form of a check payable jointly to petitioners and

---

[2] This amount represents full satisfaction of any right of subrogation, assignment, claim, lien, or cause of action that the State of Missouri, or its third party administrator, Amerigroup Community Care, may have against any individual as a result of any Medicaid payments made to or on behalf of A.K. as a result of her alleged vaccine-related injury suffered on or about September 15, 2015, under Title XIX of the Social Security Act.  See 42 U.S.C. § 300aa-15(g),(h).

Optum Subrogation Services
L-3994
Columbus, OH 43260-3994
Optum File #: SN23385893
Attn: Karen Challeen

Petitioners agree to endorse this check to Optum Subrogation Services.

     e.    An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

     f.    An amount of $250,000.00 to purchase the annuity contract described in paragraph 11 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

These amounts represent compensation for all damages that would be available under 42 U.S.C. §300aa-15(a).

     9.    The Life Insurance Company must have a minimum of $250,000,000.00 capital

and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance

Company must have one of the following ratings from two of the following rating organizations:

     a.    A.M. Best Company:  A++, A+, A+g, A+p, A+r, or A+s;

     b.    Moody's Investor Service Claims Paying Rating:  Aa3, Aa2, Aa1, or Aaa;

     c.    Standard and Poor's Corporation Insurer Claims-Paying Ability Rating:  AA-, AA, AA+, or AAA;

     d.    Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

     10.    The Secretary of Health and Human Services agrees to purchase an annuity

contract from the Life Insurance Company for the benefit of A.K., pursuant to which the Life

Insurance Company will agree to make payments periodically to the trustee for the following

items of compensation:

3

a.  For future unreimbursable Insurance Maximum out of Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,435.73 to be paid up to the anniversary of the date of judgment in year 2041. Then, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $9,222.85 to be paid up to the anniversary of the date of judgment in year 2060, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

b.  For future unreimbursable Medicare Part B Deductible, Medicare Supplement F, and Medicare Part D expenses, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $2,702.56 to be paid for the remainder of A.K.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

c.  For future unreimbursable Travel to Kennedy Krieger Institute expenses, beginning on the first anniversary of the date of judgment, an annual amount of $5,067.50 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $5,067.50 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

d.  For future unreimbursable Melatonin, MiraLAX, Magnesium Gluconate, and Ex Lax expenses, beginning on the first anniversary of the date of judgment, an annual amount of $492.56 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $492.56 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

e.  For future unreimbursable Disposable Bed Pad, Wipe, Incontinence Pad, and Glove expenses, beginning on the first anniversary of the date of judgment, an annual amount of $444.92 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $444.92 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

f.  For future unreimbursable Pull-Up expenses, on the first anniversary of the date of judgment, a lump sum of $621.28, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

g.  For future unreimbursable Home Health Aide expenses, beginning on the first anniversary of the date of judgment, an annual amount of $10,329.59 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of

4

$20,659.18 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $30,988.78 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

h.     For future unreimbursable Respite Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $9,535.01 to be paid up to the anniversary of the date of judgment in year 2034, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

i.     For future unreimbursable Case Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,648.60 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $2,432.40 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $2,432.40 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j.     For future unreimbursable Van Modification expenses, on the anniversary of the date of judgment in year 2030, a lump sum of $22,803.75. Then, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $2,280.38 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $2,280.38 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

k.     For future unreimbursable Driver Evaluation and Driver Training expenses, on the anniversary of the date of judgment in year 2031, a lump sum of $1,038.84, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l.     For future unreimbursable AFO, TLSO, Stretching Brace, Walker, and Lofstrand Crutch expenses, on the anniversary of the date of judgment in year 2083, a lump sum of $362.79. Thereafter, beginning on the anniversary of the date of judgment in year 2084, an annual amount of $90.53 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

m.     For future unreimbursable FES Machine expenses, on the anniversary of the date of judgment in year 2035, a lump sum of $21,400.05. Then, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $1,426.67 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter,

beginning on the anniversary of the date of judgment in year 2082, an annual amount of $1,426.67 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

n.   For future unreimbursable FES Electrode, ADL, Reacher, and Portable Ramp expenses, on the first anniversary of the date of judgment, a lump sum of $1,281.78. Then, beginning on the second anniversary of the date of judgment, an annual amount of $1,231.11 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $1,231.11 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

o.   For future unreimbursable Medical Alert expenses, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $376.41 to be paid up to the anniversary of the date of judgment in year 2060. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $376.41 to be paid for the remainder of A.K.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

p.   For future unreimbursable Home Gym expenses, on the anniversary of the date of judgment in year 2040, a lump sum of $1,316.54, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the trustee in monthly, quarterly, annual, or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the trustee and do not require that the payment be made in one annual installment. The trustee will continue to receive the annuity payments from the Life Insurance Company only so long as A.K. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of A.K.'s death.

11.   The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of A.K., pursuant to which the Life

Insurance Company will agree to make certain lump sum payments to A.K. for pain and suffering that would be available under 42 U.S.C. §300aa-15(a), as follows:

a.  A certain Lump Sum of $53,502.95 payable on March 29, 2033.

b.  A certain Lump Sum of $64,512.81 payable on March 29, 2037.

c.  A certain Lump Sum of $77,557.15 payable on March 29, 2041.

d.  A certain Lump Sum of $92,938.20 payable on March 29, 2045.

e.  A certain Lump Sum of $111,041.54 payable on March 29, 2049.

f.  A certain Lump Sum of $131,157.88 payable on March 29, 2053.

g.  A certain Lump Sum of $154,915.68 payable on March 29, 2057.

The purchase price of the annuity described in this paragraph shall neither be greater than nor less than $250,000.00. In the event that the cost of the annuity set forth above would vary from $250,000.00, the certain lump sum payable on March 29, 2057, shall be adjusted to ensure that the total actual cost of the annuity is neither less nor greater than $250,000.00. The certain lump sum payments provided herein shall be made to A.K. as set forth above. Should A.K. predecease payment of any of the certain lump sum payments set forth above, said payments shall be made to her estate. However, written notice to the Secretary of Health and Human Services and the Life Insurance Company shall be provided within twenty (20) days of A.K.'s death.

12.  The annuity contracts will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 13 herein, and that they do not guarantee or insure any of the

7

future annuity payments. Upon the purchase of the annuity contracts, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

13.     As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

14.     Petitioners and their attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

15.     Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 13 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

16.     The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursable expenses, the money provided pursuant to this Stipulation will be used solely for the benefit of A.K. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

17.     Petitioners have provided evidence that they presently are duly authorized to

8

serve as co-conservators of A.K.'s estate under the laws of the State of Missouri. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.K. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.K. upon submission of written documentation of such appointment to the Secretary.

18.    In return for the payments described in paragraphs 8 and 13, petitioners, in their individual capacities and as legal representatives of A.K., on behalf of themselves, A.K., and her heirs, executors, administrators, successors or assigns, do forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of A.K. resulting from, or alleged to have resulted from, the Tdap, Hep. B, IVP, HIB, and/or pneumococcal conjugate vaccines administered on September 15, 2015, as alleged by petitioners in a petition filed on June 26, 2028, an amended petition filed on May 5, 2023, and a second amended petition for vaccine compensation filed on or about August 15, 2023, in the United States Court of Federal Claims as petition No. 18-915V.

19.    If A.K. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

9

20.     If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

21.     This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 13 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

22.     Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

23.     This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that Tdap, Hep. B, IVP, HIB, and/or pneumococcal conjugate vaccines caused A.K. to develop TM, or any other injury or condition, or that A.K's current condition is a sequelae of a vaccine-related injury..

24.     All rights and obligations of petitioners hereunder shall apply equally to petitioners' heirs, executors, administrators, successors, and/or assigns as legal representatives of A.K.

### END OF STIPULATION

10

Respectfully submitted,

**PETITIONER:**

ROBERT SCOTT KECK

**PETITIONER:**

ANGELA M. KECK

**ATTORNEY OF RECORD FOR
PETITIONERS:**

LELAND F. DEMPSEY, ESQ.
Dempsey, Kingsland & Osteen, P.C.
1100 Main Street, Suite 1860
Kansas City, Missouri 64105
Tel: (816) 421-6868

**AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:**

Henry P.    Digitally signed by Henry P.
            Mcmillan -S5
by Mcmillan -S5   Date 2023.10.31 14:43:05
                  -04'00'
CDR GEORGE REED GRIMES, MD, MPH
Director, Division of Injury
  Compensation Programs
Health Systems Bureau
Health Resources and Services
  Administration
U.S. Department of Health
  and Human Services
5600 Fishers Lane, 08W-25A
Rockville, MD 20857

Dated: 11/21/2023

**AUTHORIZED REPRSENTATIVE
OF THE ATTORNEY GENERAL:**

HEATHER L. PEARLMAN
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

**ATTORNEY OF RECORD FOR
RESPONDENT:**

DEBRA A. FILTEAU BEGLEY
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4181
email: debra.begley@usdoj.gov

11